IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

JOEL S. ELLIOTT,

            Petitioner,

vs.

UNITED STATES OF AMERICA,

            Respondent.

Case No.  1:20-CV-0101-SWS
(Criminal Case No. 1:15-CR-042-SWS)

---

## ORDER DENYING SUCCESSIVE MOTION UNDER 28 U.S.C. § 2255

On December 23, 2021, the Tenth Circuit Court of Appeals granted the Petitioner/Defendant Elliott a certificate of appealability and vacated this Court's January 13, 2021 order denying his second and successive motion under 28 U.S.C. § 2255.  (*See* Order and Judgment, ECF No. 60-1.)  The appellate court further remanded this matter for consideration of Defendant's § 2255 motion in light of the Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021).  (*Id.*)  This Court subsequently set a schedule for supplemental briefing from the parties.  (*See* ECF No. 66.)  Having considered the additional briefing and for the reasons discussed below, the Court finds *Borden* does not provide a basis for granting the Defendant's successive § 2255 motion.

### PROCEDURAL HISTORY

This matter came before the Court on Elliott's second or successive motion under 28 U.S.C. § 2255 to vacate or set aside his conviction and sentence (*See* ECF No. 1) (CR

Case ECF No. 211).  In October of 2015, Elliott was convicted of arson of a building owned or possessed by an entity receiving federal funds, in violation of 18 U.S.C. § 844(f), and using a firearm (destructive device) during and in relation to a crime of violence pursuant to 18 U.S.C. § 924(c).  Elliott was also convicted of possessing an unregistered firearm and false declaration before a Grand Jury.  He was sentenced to 444 months of imprisonment.  (*See Judgment*, CR Case ECF No. 149.)

Elliott appealed his conviction, raising issues regarding the government's use of an undercover informant and the building occupant's receipt of federal funds.  The Court of Appeals affirmed.  *See United States v. Elliott*, 684 F. App'x 685, 698 (10th Cir. 2017) (*Elliott I*).  Elliott then filed his first § 2255 motion, arguing his trial counsel was constitutionally ineffective and the government violated the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963).  (CR Case ECF No. 204; CV Case No. 1:18-CV-0012-SWS.)  This Court denied that motion, and the Court of Appeals denied Elliott's request for a COA to appeal that denial.  *See United States v. Elliott*, 753 F. App'x 624, 626 (10th Cir. 2018) (*Elliott II*).

Next, Elliott filed a Rule 60 motion, which this Court denied and declined to reconsider.  (*See* Case No. 1:18-CV-0012-SWS, ECF Nos. 31, 36, 39, 41.)  The Court of Appeals determined Elliott's Rule 60 motion and motion to reconsider were actually unauthorized second or successive § 2255 motions and remanded for this Court to dismiss them for lack of jurisdiction.  *United States v. Elliott*, 807 F. App'x 801, 804 (10th Cir. 2020) (*Elliott III*).  Elliott subsequently asked the appellate court for authorization to file a second or successive § 2255 motion based on, among various other

grounds, *United States v. Davis*, 139 S. Ct. 2319 (2019).  (*See* CR Case ECF No. 209.)

The Court of Appeals authorized the successive motion pursuant to § 2255(h)(2), but

only insofar as it challenged his § 924(c) conviction and sentence under *Davis*.  (*See* CR

Case ECF No. 210.)

The bulk of Elliott's 444-month sentence was attributable to his § 924(c)

conviction, which required a mandatory 360-month sentence to run consecutively with

any other sentences.  In *Davis*, the Supreme Court declared § 924(c)(3)(B) – one of two

clauses defining a "crime of violence" – void for vagueness.  139 S. Ct. at 2324.  Thus,

the Court of Appeals "allowed Elliott to ask [this Court] whether his arson conviction

qualifies as a crime of violence under § 924(c)(3)(A) – the clause that remained intact."[1]

*United States v. Elliott*, No. 21-8016   (10th Cir. July 14, 2021) (Order Denying

Certificate of Appealability at 3, *vacated* Dec. 23, 2021).

Though Elliott raised various other issues in his successive motion, this Court

addressed only the authorized *Davis* question.  (*See* Order Denying Successive Motion

Under 28 U.S.C. § 2255 at 2 n.2, ECF No. 23.)   The Court first determined that

employing fire or explosives to destroy or damage property necessarily involves the use

of "physical force."  (*Id.* at 6-7.)  In addition, the Court concluded the property at issue in

§ 844(f) is necessarily the property *of another*; that is so because it has as an element a

---

[1] For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

> (A) *has as an element the use, attempted use, or threatened use of physical force against the person or property of another*, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3) (emphasis added).

requirement that the property damaged or destroyed by the arson be "in whole or in part owned or possessed by, or leased to, the United States" or one of its entities, or by an institution or organization receiving federal financial assistance. (*Id.* at 9.) Ultimately, this Court held, "[b]ecause Defendant's predicate federal felony – arson of a building owned or possessed by an entity receiving federal funds – separately satisfies § 924(c)(3)'s elements clause definition for the term 'crime of violence,' 'any *Davis* infirmity in [Defendant's] conviction is harmless.'" (*Id.* at 11) (citation omitted).

In reaching its conclusion, the Court did not much focus on § 844(f)'s *mens rea* requirement that a defendant have acted "maliciously."[2]  The Court noted that the court of appeals had previously concluded the "maliciousness" element of the federal arson statutes could be satisfied by proof the defendant acted either intentionally or recklessly. (*Id.* at 6 n.3) (citing *United States v. Wiktor*, 146 F.3d 815, 818 (10th Cir. 1998)).  And the Court further noted the Tenth Circuit had more recently held, based on the Supreme Court's decision in *Voisine v. U.S.*, 136 S. Ct. 2272 (2016), an offense which can be committed with a "recklessness" *mens rea* can serve as a qualifying "crime of violence" under the elements clause, 18 U.S.C. § 924(c)(3)(A). (*Id.*) (citing *United States v. Mann*, 899 F.3d 898, 902-08 (10th Cir. 2018)).  Accordingly, the Court denied Defendant's successive § 2255 motion, denied him a COA, and further denied his motion to

---

[2] The federal arson statute which served as the predicate for the Defendant's conviction under § 924(c) provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance . . .

commits an offense against the United States. 18 U.S.C.A. § 844(f)(1).

reconsider.  (*See id.*; ECF Nos. 31, 44.)  Elliott thereafter sought a COA from the Tenth

Circuit Court of Appeals.

The appellate court initially denied Elliott a COA on July 14, 2021, agreeing with

this Court's finding that the arson statute (§ 844(f)(1)) "necessarily has as an element

physical force 'against the . . . property of another.'"  (ECF No. 58 at 6) (citing §

924(c)(3)(A)).  However, upon panel rehearing, the Court of Appeals vacated its earlier

order in light of *Borden v. United States*.  *See United States v. Elliott*, No. 21-8016, 2021

WL 6110395 (10th Cir. Dec. 23, 2021).  In ultimately granting Elliott a COA, the

appellate court explained:

> At the time of the district court's ruling, this court had held that an offense
> that can be committed with a mens rea of recklessness can serve as a
> qualifying crime of violence under 18 U.S.C. § 924(c)(3)(A). *See United
> States v. Mann*, 899 F.3d 898, 902-08 (10th Cir. 2018). This court had
> likewise held that an offense committed with a mens rea of recklessness can
> serve as a qualifying "violent felony" under § 924(e)(2)(B) of the Armed
> Career Criminal Act. *See United States v. Pam*, 867 F.3d 1191, 1207-08
> (10th Cir. 2017), *abrogated by Borden*, 141 S. Ct. at 1817. This caselaw is
> relevant because the federal arson statute that served as a predicate for
> Elliott's § 924(c) conviction is violated if a defendant "maliciously
> damages or destroys, or attempts to damage or destroy," certain types of
> property "by means of fire or an explosive." 18 U.S.C. § 844(f)(1)
> (emphasis added). And this court has defined the term "maliciously" in this
> statute to include both intentional and reckless behavior. *United States v.
> Wiktor*, 146 F.3d 815, 818 (10th Cir. 1998).
>
> The district court applied *Mann* in denying Elliott's § 2255 motion on
> January 13, 2021. *See* R., Vol. 4 at 154 & n.3. It affirmatively stated that
> "an offense that can be committed with a 'recklessness' mens rea can serve
> as a qualifying 'crime of violence' under ...§ 924(c)(3)(A)." *Id.* at 154 n.3.
> Five months later, the Supreme Court held in *Borden* that a criminal
> offense requiring only a mens rea of recklessness cannot count as a violent
> felony under the elements clause of the Armed Career Criminal Act, §
> 924(e)(2)(B)(i). 141 S. Ct. at 1821-22, 1825. The Court focused on the
> meaning of "against another" within the phrase the "use of physical force

against the person of another" in the definition of "violent felony" in § 924(e)(2)(B)(i). It reasoned that " 'against another[ ]' ... demands that the perpetrator direct his action at, or target, another individual" and "[r]eckless conduct is not aimed in that prescribed manner." 141 S. Ct. at 1825. The language in § 924(e)(2)(B)(i) closely resembles the language in § 924(c)(3)(A), except the former states "against the person of another" while the latter states "against the person or property of another."

Having considered this recent legal development, we now conclude that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Slack [v. McDaniel*, 529 U.S. [473, 484 (2000)] (internal quotation marks omitted). Because Elliott has made a substantial showing of the denial of a constitutional right, a COA should issue.

*Elliott*, No. 21-8016, 2021 WL 6102495, at *1-2 (10th Cir. Dec. 23, 2021).

## BACKGROUND

On June 4, 2014, the Defendant caused an explosion and fire in a building owned by Sheridan County, Wyoming and used by the Sheridan County Attorney's Office. *Elliott I*, 684 F. App'x at 686, 696-97. At the time, Sheridan County was the recipient of federal funds. *Id.* at 696. As a result of his conduct, Defendant was charged by indictment with, *inter alia*, maliciously damaging by means of fire and explosives a building owned or possessed by an entity receiving federal funds (arson), in violation of 18 U.S.C. § 844(f), and using firearms (that is, one improvised incendiary bomb and one improvised explosive bomb) during and in relation to a federal crime of violence

(namely, arson of a building receiving federal funds), in violation of 18 U.S.C. § 924(c)(1)(A) and (B)(ii). (*See Indictment*, ECF No. 6.)[3]

Prior to trial, Elliott's counsel filed a motion to dismiss Count Two (the § 924(c) count), arguing the arson charged in Count One categorically fails to qualify as a predicate crime of violence because: (1) § 924(c)'s residual clause definition of "crime of violence" was unconstitutionally vague, citing *Johnson v. U.S.*, 576 U.S. 591, 135 S. Ct. 2551 (2015); and (2) recklessness was not a sufficient *mens rea* for purposes of § 924(c)'s elements clause, citing Ninth and Seventh Circuit cases, and, based on the Tenth Circuit's holding in *Wiktor*, a defendant could be convicted under § 844(f) for merely reckless conduct. (*See* Mot. to Dismiss Count Two, ECF No. 87.) In denying Defendant's motion, the Court acknowledged the Tenth Circuit decision in *United States v. Zuniga-Soto*, 527 F.3d 1110, 1123-25 (10th Cir. 2008), which found reckless conduct as opposed to deliberate and intentional conduct failed to satisfy the use of physical force requirement under 18 U.S.C. § 16(a)'s identical crime of violence definition. (*See* Tr. of Oral Ruling at 5, ECF No. 172.) However, based on *Wiktor*, the Court determined § 844(f)'s *mens rea* element was divisible in terms of either intentional and deliberate conduct or reckless conduct. (*Id.* at 5-7) (citing *Descamps v. U.S.*, 133 S. Ct. 2276, 2281 (2013) (statute is divisible if it "sets out one or more elements of the offense in the alternative"); and *Wiktor*, 146 F.3d at 818 (term "maliciously" includes acts done intentionally or recklessly)). Thus, the Court concluded it could instruct the jury with

---

[3] Unless otherwise indicated, citations to the docket hereafter will refer to the Defendant's criminal proceedings, Case No. 15-CR-042-S.

respect to both alternative *mens rea* regarding Count One (arson).  It could then give the jury a special verdict form whereby, if the jury found the Defendant committed the charged arson intentionally and deliberately, it could proceed to consider the Defendant's guilt on Count Two, the § 924(c) count.  But, if the jury found he committed the arson only recklessly, it would be directed to skip Count Two entirely and go on to consider Count Three.  (*Id.* at 7-8.)

The Court's instructions to the jury and special verdict form followed that plan. Jury Instruction No. 21 advised the jury that to find Defendant guilty on Count One, it must find he committed the act "intentionally *or* that he did so recklessly."  (ECF No. 134 at 22.)  Instruction No. 21 further explained the distinction between the alternative *mens rea*: "To do something intentionally is to do it deliberately[;] [t]o do something recklessly is to do it with willful disregard of the likelihood that damage or destruction would result."  (*Id.*)  The special verdict form showed that the jury followed the Court's instructions – after finding Defendant guilty of Count One, it specifically considered and "unanimously [found], by proof beyond a reasonable doubt, that the arson by means of fire and explosive as charged in Count One was committed . . . intentionally and deliberately."  (*See Verdict Form*, ECF No. 133 at 1-2.)  The jury then proceeded as directed to consider Count Two, finding Defendant guilty of the § 924(c) charge as well. (*Id.* at 2.)

Defendant Elliott was ultimately convicted of all counts.  As mentioned above, the largest portion of Defendant's 444-month sentence was attributable to his § 924(c) conviction – because his offense involved the intentional and deliberate use of a

destructive device, it required a mandatory 360-month sentence of imprisonment to be served consecutively to any other sentence(s) he received.    *See* 18 U.S.C. § 924(c)(1)(B)(ii) and (D)(ii).  In his direct appeal, Defendant did not challenge the Court's denial of his motion to dismiss Count Two, or the Court's conclusion § 844(f) was divisible with respect to its *mens rea* element.  *See Elliott I.*  Defendant likewise didn't challenge his conviction on Count Two based on any claim it was somehow necessarily based on § 924(c)'s "residual" clause definition of "crime of violence."  And neither his initial § 2255 nor his subsequent Rule 60(b) motion concerned the propriety of his § 924(c) conviction in light of Supreme Court cases such as *Johnson*, 576 U.S. at 597 (holding residual clause in definition of "violent felony" under 18 U.S.C. § 924(e)(2)(B) is unconstitutionally vague), or *Mathis v. U.S.*, 579 U.S. 500, 503 (2016) (applying long-standing rule that prior crime qualifies as a predicate "violent felony" under § 924(e) "if, but only if, its elements are the same as, or narrower than, those of the generic offense . . . [even] when a defendant is convicted under a statute that lists multiple, alternative means of satisfying one (or more) of its elements").

In his supplemental brief in support of his second or successive § 2255 motion, Defendant argues that the arson statute under which he was convicted (§ 844(f)) is indivisible; thus, the Court must apply the categorical approach to determine whether Defendant's arson conviction qualifies as a "crime of violence" supporting his § 924(c) conviction. (*See* CV Case ECF No. 68 at 10.)  Because "*Borden* makes clear that a crime of violence cannot include a statute that punishes reckless conduct" such as § 844(f)(1),

Defendant contends, the Court must vacate his conviction and sentence under §
924(c)(1)(B)(ii). (*Id.* at 10-11.)

## STANDARD OF REVIEW

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was
rendered without jurisdiction, or that the sentence imposed was not authorized by law or
otherwise open to collateral attack, or that there has been such a denial or infringement of
the constitutional rights of the prisoner as to render the judgment vulnerable to collateral
attack." 28 U.S.C. § 2255(b). The standard of review applied to § 2255 motions is
stringent. "Only if the violation constitutes a fundamental defect which inherently results
in a complete miscarriage of justice, or an omission inconsistent with the rudimentary
demands of fair procedure can § 2255 provide relief." *United States v. Gordon*, 172 F.3d
753, 755 (10th Cir. 1999). Defendant argues if his arson conviction does not qualify as a
"crime of violence" under § 924(c)(3)(A), he would be "actually innocent" of the §
924(c)(1) charge and entitled to relief under § 2255. *See United States v. Bowen*, 936
F.3d 1091, 1095 (10th Cir. 2019).

A § 2255 motion is not, however, a substitute for direct appeal and is "not
available to test the legality of matters which should have been raised on direct appeal."
*United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993); *United States v. Frady*, 456
U.S. 152, 165 (1982). "A defendant's failure to present an issue on direct appeal bars
him from raising the issue in his § 2255 motion, unless he can show cause excusing his
procedural default and actual prejudice resulting from the errors of which he complains,
or can show that a fundamental miscarriage of justice will occur if his claim is not

addressed." *Cook*, 997 F.2d at 1320 (citing *Frady*, 456 U.S. at 167-68). "[I]f the government raises procedural bar, the courts must enforce it and hold the defendant's claims procedurally barred unless cause and prejudice or a miscarriage of justice is shown." *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994).

In addition, § 2255(f) provides:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

## DISCUSSION

The question presented by the Court of Appeals' remand is whether, under the circumstances of this case, the Defendant's § 924(c) conviction must be set aside under *Borden* because it was based on his arson conviction under § 844(f), which has as its *mens rea* element a requirement that a defendant have acted "maliciously" – an element which the Court of Appeals has determined can be satisfied by *either* intentional *or* reckless conduct. *See Wiktor, supra.* The Court agrees with the United States that the

unique and novel circumstances of *this* case "necessarily doom" the Defendant's reliance

on *Borden* and *Davis* as a means of vacating his conviction under § 924(c).  (*See* United

States' Supp. Br. at 9, CV Case ECF No. 69.)

      *Borden* decided that with respect to characterizing a *prior offense* for purposes of a

sentencing enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §

924(e), an offense that could be committed with merely a "recklessness" *mens rea* could

not satisfy that section's "elements clause" definition of "violent felony."[4]  *Borden*, 141

S. Ct. at 1821-22.[5]  However, in Defendant Elliott's case, the predicate arson offense was

charged and tried contemporaneously with the § 924(c) charge, and the Defendant's trial

was expressly conducted under § 924(c)(3)'s elements clause.  At the time of Defendant's

trial, Tenth Circuit case law had established conduct involving only recklessness – as

opposed to deliberate and intentional conduct – cannot satisfy the "use of physical force"

requirement of the identical "elements clause" in 18 U.S.C. § 16.  *See Zuniga-Soto*, 527

F.3d at 1123-25.  Recognizing this authority, and the holding in *Wiktor* that the

"malicious" element of the federal arson statutes could be satisfied by *either* intentional

*or* reckless conduct, the Court determined § 844(f) was divisible – *at least prospectively*

– with respect to its *mens rea* element, so the intent question with respect to § 924(c)(3)'s

---

[4] The ACCA mandates a 15-year minimum sentence for persons found guilty of illegally possessing a gun who have three or more "previous convictions" for a "violent felony."  18 U.S.C. § 924(e)(1).  "Violent felony" is defined as "any crime punishable by imprisonment for a term exceeding on year . . . that –
        (i) *has as an element the use, attempted use, or threatened use of physical force against the person of another*; or
        (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]"
*Id.* § 924(e)(2)(B) (emphasis added).
[5] The Tenth Circuit Court of Appeals has determined "the new rule announced by *Borden* applies retroactively" to cases on collateral review.  *United States v. Toki*, 23 F.4th 1277, 1281 (10th Cir. 2022).

elements clause could be resolved by the instructions and special verdict form given to the jury. (*See* Tr. of Oral Ruling denying Def.'s motion to dismiss Count Two at 5-8, ECF No. 172.) In this way the Court could *prospectively* ensure the Defendant's conviction on Count Two could only be based on a **unanimous jury** finding "beyond a reasonable doubt" that the Defendant not only committed the arson as charged in Count One, but also that he did so intentionally and deliberately, and not merely recklessly.

As set forth above, the jury in Defendant's case followed the Court's instructions and found him guilty of the arson charged in Count One and further found he had committed that offense intentionally and deliberately, and *not* recklessly. Thus, it simply cannot be disputed that Defendant was tried and convicted of having committed an intentional and deliberate arson when he blew up the Sheridan County Attorney's Office, and not merely a "reckless" one. Nor, as this Court (and the Court of Appeals) held in resolving the Defendant's second and successive motion the first time around, is there any doubt arson as described by § 844(f) necessarily entails a use of physical force against the property of another, for purposes of § 924(c)'s "elements clause" definition for crimes of violence. And given those conclusions, it is likewise clear Defendant's § 924(c) conviction was and is sustainable under that section's elements clause, and accordingly does not depend on § 924(c)'s unconstitutionally vague residual clause.

The sole question the Court of Appeals asked this Court to determine when it authorized the Defendant's second and successive § 2255 motion in the first instance was whether the Defendant's § 924(c) conviction was subject to challenge under *Davis* for being based in part under § 924(c)'s residual clause. As found previously by this Court,

it was not – Defendant's § 924(c) conviction was expressly based on § 924(c)'s elements clause, so *Davis* has no application here.  (ECF No. 212 at 11.)  The sole question the Court of Appeals asks this Court to resolve in regard to the instant remand is whether the Supreme Court's decision in *Borden* entitles Defendant to habeas relief.

The answer to that question – as the above-described circumstances of this case illustrate – must also be no.  This Court specifically considered the *mens rea* issue underlying *Borden* when it addressed the Defendant's motion to dismiss Count Two (the § 924(c) count) and determined this was an issue resolvable through proper jury instructions.  By directing the jury to consider Count Two *only if* it first concluded the Defendant's malicious arson was committed intentionally and deliberately, the Court effectively eliminated any *Borden* issue in this case.[6]

Although Defendant pursued an appeal from his conviction and sentence, he did not challenge his conviction on Count Two based on any of the issues raised in his motion to dismiss that count.  He did not challenge this Court's determination that, in light of the Supreme Court's decision in *Descamps* and the Tenth Circuit's decision in *Wiktor*, § 844(f) was divisible with respect to its two alternative *mens rea* elements.  Nor did he take issue with the Court's determination it could ensure any conviction on Count Two was based *only* on a jury finding that his commission of the predicate arson was intentional, and not merely reckless.

---

[6] It is worth emphasizing the *Borden* issue the Court was resolving was presented thirteen years ago by the Tenth Circuit decision in *Zuniga-Soto*, which held essentially the same as *Borden*.

Likewise, Defendant didn't challenge any of these matters in his first motion under § 2255, filed in January of 2018. Indeed, he didn't raise a challenge to his § 924(c) conviction until he filed his second and successive motion under § 2255(h) in June 2020. And even there his argument focused on *Davis* and *Johnson*-based "residual clause" issues – he did not question whether this Court's divisibility of § 844(f) was proper.

Given this history, the Court agrees with the government it is simply too late to raise such questions now. As the foregoing history of this case demonstrates, the matter of this Court's pretrial decisions on § 844(f)'s divisibility with respect to its *mens rea* element was fully ripe for adjudication in connection with the Defendant's direct appeal from his conviction. *Taylor v. United States*, 495 U.S. 575, 599-602 (1990), represented the Supreme Court's first decision concerning the use of a "categorical" analysis in determining whether a *previous state conviction* could qualify as a predicate violent felony for purposes of the ACCA's sentencing enhancement provisions. *See United States v. Mjoness*, 2021 WL 4078002, at *3 (10th Cir. July 13, 2021) (unpublished) (citing *Taylor* and describing categorical approach).[7] That was 32 years ago, or 25 years prior to the Defendant's trial in 2015.

To be sure, the Supreme Court has periodically revisited the ACCA and *Taylor's* scheme of categorical analysis over the years. *See Shepard v. U.S.*, 544 U.S. 13, 26 (2005) (using a "modified" categorical approach in guilty plea context where a statute listed alternative, divisible elements, only one of which would have sufficed for purposes

---

[7] *Mjoness* was originally a published decision. *See* 4 F.4th 967. But on the defendant's petition for rehearing and rehearing *en banc*, the Court of Appeals denied rehearing but directed the clerk to withdraw the original published decision and replace it with an unpublished order and judgment. *See* 9 F.4th 1299 (Sept. 3, 2021).

of a generic offense); *Descamps v. U.S.*, 570 U.S. 254 (2013) (holding "sentencing courts may not apply the modified categorical approach" to determine whether defendant's prior conviction qualifies as predicate violent felony under ACCA enhancement provisions "when the crime of which the defendant was convicted has a single, indivisible set of elements"); and, more recently, *Mathis, supra* (differentiating between the essential elements of burglary and various factual means of satisfying such elements for purposes of determining whether a prior conviction could qualify as a predicate violent felony under the ACCA's sentencing enhancement provisions).

But as of the time of the Defendant's trial and direct appeal, and especially as of the time he filed his first § 2255 motion in 2018, the law with respect to the categorical approach and the divisibility of statutes was fairly well established. Given the foregoing, the government argues any claim by Defendant *now* that this Court erred in its pretrial decision that § 844(f) was divisible with respect to its *mens rea* element is both procedurally barred under *Frady* and untimely under § 2255(f)'s limitation periods. The Court agrees. Defendant's claim is procedurally barred now because it was plainly available to him in connection with his direct appeal, and though he asserted such a claim prior to trial, he did not pursue the claim on appeal. He likewise failed to raise such a claim in his first motion under § 2255. Defendant has offered no particular justification for these choices. And none are apparent, except, perhaps, a claim his attorney was constitutionally ineffective for not having raised the claim on direct appeal. *See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002) (procedural bar for failure to raise a claim on direct appeal does not apply to an ineffective assistance of counsel claim).

### a.      Procedural Bar Not Excused by Ineffective Assistance

To establish ineffective assistance of counsel, a defendant must show that his counsel's "representation fell below an objective standard of reasonableness," and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). In other words, a defendant must show his counsel's performance was deficient and the deficient performance prejudiced the defense. *United States v. Salazar*, 323 F.3d 852, 857 (10th Cir. 2003). So here, for Defendant's appellate counsel to have rendered deficient performance in regard to the issues raised on appeal, Defendant must show counsel's failure to raise the "divisibility" question was objectively unreasonable. And he would have to further show a reasonable probability that, had counsel raised the issue, the outcome of his appeal would have been different. *See United States v. Cox*, 782 F. App'x 674, 679-80 (10th Cir. 2019). "Thus, in analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, we look to the merits of the omitted issue . . . ." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (internal quotation and citation omitted).

The Court's review of an ineffective assistance of counsel claim is "highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Taylor*, 454 F.3d at 1079. And "[t]he reasonableness of counsel's

performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *United States v. Salazar*, 323 F.3d 852, 857 (10th Cir. 2003) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)). Even were Defendant explicitly making an ineffective assistance claim, he can establish neither deficient performance nor prejudice.

Whether § 844(f)'s maliciousness element was "divisible" for purposes of a jury determination that a defendant's arson was an intentional rather than reckless arson, and thus a valid "crime of violence" predicate for § 924(c) purposes, was at worst uncertain, but in any event not illogical. Virtually all of the cases on divisibility up until the Defendant's trial and direct appeal (and indeed, even to the present) have concerned how to characterize *prior* convictions *See, e.g., Taylor, supra, Shepard, supra, Descamps, supra, Mathis, supra.* In those cases, the principal concern was to develop a method for determining whether a prior conviction met certain generic definitions of particular crimes, such a burglary, or arson, or robbery, without "extending judicial factfinding beyond the recognition of a prior conviction" *Descamps*, 570 U.S. at 269. The "mini-trials" that would be required with a factual – as opposed to "categorical" – approach for these prior convictions would present "daunting" "practical difficulties and potential unfairness," would be inconsistent with ACCA's text and history, and would raise Sixth Amendment/jury trial concerns. *Id.* at 267, 269-70 (citing *Taylor*, 495 U.S. at 601-02).

But none of those concerns were at issue with respect to this Court's resolution of Defendant's motion to dismiss. The Court expressly relied on *Wiktor's* determination that federal arson's "malicious" *mens rea* element consisted of two distinct, and

alternative components – intentional and deliberate or reckless.   Several other courts which have considered the matter reached the same conclusion as *Wiktor, see Rudolph v. U.S.*, 551 F. Supp. 3d 1270, 1283 (N.D. Ala. 2021) (collecting cases); and the Tenth Circuit in *Zuniga-Soto* suggested a statute could be divisible along such *mens rea* lines, *see* 527 F.3d at 1122.

Moreover, none of the uncertainties or inequities addressed by Justice Blackman in *Taylor* had any resonance in the context of the Defendant's trial.   There would be no judicial factfinding related to a prior conviction and a jury, in a contemporaneous proceeding, would make the predicate fact finding.   By instructing the jury on both *mens rea* alternatives encompassed by § 844(f)'s "malicious" element, and then (1) directing the jury to expressly find whether – if it found Defendant guilty of the arson – he acted intentionally and deliberately, or only recklessly, the Court avoided any uncertainty regarding the basis for the arson conviction.   And by (2) permitting the jury to consider his culpability on Count Two *only* if it found the arson was committed intentionally and deliberately, the Court effectively eliminated any possibility the Defendant's § 924(c) conviction could be fairly challenged on *mens rea* grounds based on, at the time, *Zuniga-Soto* or, more recently, *Borden*.

To be sure, as the Court recognized at the time, its solution to the issues presented by Defendant's motion to dismiss was perhaps novel.   (*See* Tr. of Oral Ruling at 8, ECF No. 172) ("this Court is not aware of a situation where this approach has been used").   But, that the Court took a novel approach does not make appellate counsel's failure to pursue the issue on appeal wholly unreasonable.   Indeed, the Court's approach is

consistent with that ultimately approved by the Tenth Circuit in *Mjoness*, where the question concerned the "prospective divisibility" of 18 U.S.C. § 875(c) as a predicate for a contemporaneous § 924(c) charge. *See* 2021 WL 4078002.

Defendant cannot show prejudice either. There are few cases like *Mjoness* and this one addressing divisibility in a similar prospective context. Whether this Court erred in its judgment about § 844(f)'s divisibility with respect to its *mens rea* element is certainly debatable. However, in the particular context of this case, such an error did not prejudice Defendant as none of the concerns before the Supreme Court in *Taylor* are present. By crafting jury instructions and a special verdict form that ensured Defendant could only be convicted under § 924(c) if the jury unanimously found his arson to have been committed intentionally and deliberately, the Court eliminated the concerns underlying *Taylor, Shepard, Descamps,* and *Mathis* – and *Borden* as well. *See Taylor*, 495 U.S. at 602 ("[The] categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [the] generic [offense]."). Accordingly, the Court cannot say there was, at the time of Defendant's direct appeal, a *reasonable probability* – as opposed to a mere *possibility* – that pursuing a challenge to this Court's approach in denying his motion to dismiss would have been successful.

**b.    § 2255(f) Limitations Period**

The Court plainly relied on § 924(c)'s elements clause in submitting that charge – Count Two – to the jury, agreeing with the government that while recklessness would not suffice under *Zuniga-Soto* for purposes of the "elements clause" definition for "crime of

violence," the alternative *mens rea* of intentional and deliberate conduct clearly would. The Court instructed the jury accordingly.   And the jury returned verdicts expressly finding Defendant's arson was intentional and deliberate and further finding him guilty of Count Two.  So only a claim the Court erred in its divisibility determination with respect to § 844(f)'s *mens rea* requirement could serve as a basis for finding Defendant's § 924(c) conviction invalid, in turn leading to a conclusion his conviction could only be sustained under § 924(c)(3)(B)'s unconstitutional residual clause.   But any such claim now comes too late.   And likewise, too late would be any claim his attorney was constitutionally ineffective for not having pursued these issues on direct appeal.

Foremost, as discussed above, a claim challenging the Court's divisibility of § 844(f) was plainly ripe at the time Defendant filed his direct appeal.   Moreover, by the time Defendant filed his first § 2255 motion in January of 2018, *Mathis* – the Court's last word on divisibility – was well over a year old (June of 2016).  So, any claim challenging the Court's divisibility analysis based on *Mathis* would have had to be filed either within one year of *Mathis*, by June of 2017, or in the Defendant's case, within a year of when his conviction became final, whichever turns out to be later.   A conviction is final when, after a direct appeal is decided, the Supreme Court has denied *certiorari* or the time for seeking Supreme Court review has expired.  *See United States v. Prows*, 448 F.3d 1223, 1227 (10th Cir. 2006) ("In the context of the one-year limitation period for filing a § 2255 motion, a criminal conviction becomes final when the Supreme Court affirms it on direct review, denies certiorari, or (in the absence of a certiorari petition) the time for filing a certiorari petition expires.").

Here, Defendant's direct appeal was decided on April 5, 2017. *See Elliott I.* His time for seeking *certiorari* from the Supreme Court expired 90 days later, on about July 5, 2017. Thus, his initial § 2255 motion filed in January of 2018 was timely, and any new claims he wanted to raise up until July 5, 2018, would likewise have been timely and likely permissible. *See United States v. Espinoza-Saenz*, 235 F.3d 501, 503-05 (10th Cir. 2000). In neither Defendant's direct appeal nor his initial § 2255 motion did he challenge his conviction on Count Two on the basis that under *Taylor, Shepard, Descamps* and *Mathis*, the Court's divisibility determination with respect to § 844(f)'s *mens rea* element was erroneous. Nor did he ever seek to add such a claim during the pendency of his § 2255 proceeding.[8] So by the time Defendant filed his motion for authorization to file a second or successive § 2255 motion in April of 2020 based, in part, on *Davis, Mathis* was nearly four years old. It was thus too late for the Defendant to challenge the Court's 2015 divisibility determination, even assuming the deadline could be measured against § 2255(f)(3), rather than (f)(1) (the date his conviction became final in July of 2017). Either way, it is simply too late to make such a claim now.

### c. Defendant's Claim of Actual Innocence Based on New Statutory Interpretation Cannot Excuse Procedural Defaults

Defendant asserts "actual innocence" as his excuse to both procedural bars raised by the government. In *McQuiggin v. Perkins*, the Supreme Court held "actual innocence,

---

[8] Neither can Defendant now argue *United States v. Mann* – which held an offense that can be committed with a "recklessness" *mens rea* can serve as a qualifying "crime of violence" under 18 U.S.C. § 924(c)(3)(A) – effectively made futile any challenge to the Court's divisibility ruling, thereby excusing his failure to timely raise it on direct appeal or in his first § 2255 motion. *Mann* was not issued until August 10, 2018, *after* Defendant's direct appeal was decided and *after* expiration of the § 2255 limitations period.

if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." 569 U.S. 383, 386 (2013).  The Court "caution[ed], however, that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the *new evidence*, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)) (emphasis added).

The government contends the kind of "actual innocence" that would excuse a defendant's procedural default is "factual innocence" and not merely legal insufficiency, and Defendant has offered no new facts or evidence to show his actual innocence.  (*See* Gov't Suppl. Resp. Br. at 19-20, 22, CV Case ECF No. 69) (citing *Bousley v. U.S.*, 523 U.S. 614, 623-24 (1998)).  Defendant argues claims of actual innocence based on new statutory interpretations can be brought in a § 2255 motion and can excuse procedural default – and are not limited to claims based on new evidence.  (Def.'s Reply Br. at 2-3, CV Case ECF No. 72) (citing *Davis v. U.S.*, 417 U.S. 333 (1974), and *Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011)).  While Defendant may be correct in the context of an *initial* § 2255 motion,[9] that is not the case with respect to a second or successive motion. In *Prost*, then-Circuit Judge Gorsuch explained the distinction:

> [Section] 2255(h), added in 1996 as part of AEDPA, restricts second and successive motions to those raising newly discovered evidence or new constitutional rulings. When Congress adopted § 2255(h), it was

---

[9] *But see United States v. Bowen*, 936 F.3d 1091, (10th Cir. 2019) ("neither our circuit nor the Supreme Court has definitively resolved whether a claim of actual innocence based on a new statutory interpretation—rather than such a claim based on new evidence—can overcome § 2255's statute of limitation").

undoubtedly aware that prisoners might wish to press other sorts of arguments in second or successive motions. And it was surely aware that prisoners might seek to pursue second or successive motions based on newly issued statutory interpretation decisions. *See Davis v. United States*, 417 U.S. 333, 347, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (holding long before AEDPA that claims of innocence based on new statutory interpretations could be brought in a § 2255 motion); *see also Merck & Co. v. Reynolds*, 559 U.S. 633, 130 S.Ct. 1784, 1795, 176 L.Ed.2d 582 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."). Indeed, cognizant that prisoners would seek to pursue motions based on new statutory interpretations, Congress in § 2255(f)(3) aimed to ensure that they may assert such claims in *initial* § 2255 motions without risk of being time-barred, explaining that the one-year statute of limitations for bringing a first § 2255 motion begins to run only from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *See Haugh v. Booker*, 210 F.3d 1147, 1149–50 (10th Cir. 2000) (recognizing that the new statutory interpretation announced in *Bailey* establishes the kind of "right" needed to take advantage of § 2255(f)(3)). But, just as evidently, in subsection (h) Congress chose to preclude petitioners from raising such statutory innocence claims—among many other kinds of claims—in second or successive § 2255 motions.

636 F.3d at 585-86 (emphasis in original).[10] Defendant cites a few additional cases in

support of his argument, but none involved a statutory innocence claim being raised in a

---

[10] In a footnote, Judge Gorsuch further explained:

One might question why Congress chose to distinguish between claims based on newly discovered evidence or new constitutional rules, on the one hand, and claims based on new statutory interpretations, on the other. Perhaps Congress pursued this route because a claim based on a new statutory interpretation—though one type of factual innocence—doesn't mean that a prisoner didn't commit the acts for which he was convicted (as can happen in cases involving newly discovered evidence), or that his conduct was beyond the power of Congress to proscribe (as is true with many retroactive constitutional rules). In those cases involving new statutory interpretations, after all, the prisoner committed acts that a court of competent jurisdiction at that time believed to be criminal under the relevant statute. But whatever Congress's intent, and even if one might prefer otherwise, Congress was free to legislate (as it did) that—after one round of collateral review—finality interests outweigh the interests in favor of (again) reopening final judgments to permit new statutory interpretation claims. Courts themselves have long distinguished between types of innocence claims, holding that only *factual* innocence may excuse a procedural default in the § 2241 context. *See Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

636 F.3d at 586 n.6 (emphasis in original).

second or successive § 2255 motion.  *See Bousley*, 523 U.S. at 622-24 (holding defendant could attempt to make showing of "factual innocence" based on new statutory interpretation to excuse procedural default, in context of *initial* § 2255 motion); *Batrez Gradiz v. Gonzales*, 490 F.3d 1206, 1209 (10th Cir. 2007) (addressing actual innocence exception to exhaustion requirement in immigration proceeding); *Waucaush v. U.S.*, 380 F.3d 251, 254-55 (6th Cir. 2004) (addressing actual innocence excuse for failure to raise claim on direct appeal, in context of *initial* § 2255 motion); *Marrero v. Ashcroft*, 374 F.3d 46, 53-54 (2d Cir. 2004) (holding that, notwithstanding a habeas petitioner's failure to exhaust his claims in immigration proceeding, court had jurisdiction to consider the petitioner's claim if "necessary to avoid manifest injustice" resulting from a new statutory interpretation).

Defendant offers no new evidence establishing his factual innocence.  Because this matter is before the Court on Defendant's second or successive § 2255 motion, his claim of actual innocence based on *Borden's* statutory interpretation of 18 U.S.C. § 924(e)(2)(B)(i) cannot excuse his procedural defaults.  In any event, the issue presented by *Borden* was squarely before the Court at the time of Defendant's trial.  Given the evidence, the jury instructions, and the jury's unanimous findings of guilt, Defendant cannot plausibly claim he is actually innocent of the § 924(c) offense that is at the heart of this proceeding.  Any claim the Court erred in its divisibility determination was ripe for consideration either on direct appeal or under his initial § 2255; hence, Defendant's claim now with respect to these matters is untimely and procedurally barred.

### d.     Defendant is Not "Actually Innocent" of § 924(c)(3)

Even if Defendant could clear the procedural hurdles, his motion should be denied considering the unique circumstances of this case.

Defendant insists he is actually innocent of the § 924(c) charge because, after *Borden*, it is clear § 844(f)'s inclusion of reckless conduct precludes it from qualifying as a predicate crime of violence under the elements clause. Defendant's argument depends, however, on a blind application of the categorical approach, without any reference to the record (or reality) in this case. To be sure, courts have routinely applied the categorical approach when determining whether a *previous* offense satisfies the elements clause definition of violent felony under § 924(e)(2)(B)(i). *See, e.g., Stokeling v. U.S.*, 139 S.Ct. 544, 555 (2019); *Borden*, 141 S.Ct. at 1822.

> Under that by-now-familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant. The focus is instead on whether the elements of the statute of conviction meet the federal standard. Here, that means asking whether a state offense necessarily involves the defendant's "use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i); *see Shular v. United States*, 589 U. S. ——, —— – ——, 140 S.Ct. 779, 783–84, 206 L.Ed.2d 81 (2020). If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an ACCA predicate.

*Borden*, 141 S.Ct. at 1822. The application of §924(c) in this case does not require consideration of whether a previous or prior offense satisfies the elements clause.

Although "applicable in several statutory contexts," *id.* – including determinations of whether a contemporaneously-charged predicate offense is categorically a "crime of violence" under § 924(c)'s elements clause, *see Toki*, 23 F.4th at 1281 – this case illustrates the fallacy in applying the categorical approach where a jury was required to –

and *actually* did – find all the elements necessary to qualify as a crime of violence. Indeed, *Taylor* recognized the appropriateness of an exception to the categorical approach in such circumstances:

> We think the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it *generally* requires the trial court to look only to the fact of conviction and the statutory definition of the *prior* offense. This *categorical approach*, however, *may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements* of generic burglary. For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.
>
> We therefore hold that an offense constitutes "burglary" for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to "generic" burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant.

*Taylor*, 495 U.S. at 602 (emphasis added). This is, in all relevant respects, the circumstance presented in this case.

The Court acknowledges that, had there been no jury finding in this case regarding the alternative *mens rea* sufficient for Defendant's conviction of arson under § 844(f) – *i.e.*, whether he committed the arson intentionally and deliberately or recklessly – the Court may be required to employ the categorical approach in resolving Defendant's motion (assuming he had cleared any procedural hurdles). However, because the jury unanimously and specifically found the arson was committed intentionally and deliberately, and *not* recklessly, it makes no sense to ignore that finding and blindly apply

the categorical approach to vacate Defendant's sentence under § 924(c). Reality is better than fiction; and all the reasons that have led the Supreme Court down the divisibility and categorical rabbit hole are inapplicable when the same jury, contemporaneously and separately, unanimously finds all the elements of the predicate offense.[11]

Without acknowledging *Taylor's* exception or the unique circumstances presented by the instructions and verdict form presented to the jury at his trial, Defendant argues the Court must unreasoningly employ the categorical approach – focusing only on the elements of the predicate offense – and is prohibited from looking at the facts or underlying circumstances of his conviction. (Def.'s Suppl. Br. at 4, CV Case ECF No. 68.) In his reply brief (CV Case ECF No. 72 at 5-6), Defendant cites two post-*Borden* cases decided pursuant to a § 2255 motion and addressing the federal arson statute (§ 844(i)). *See Rudolph v. U.S.*, 551 F.Supp.3d 1270 (N.D. Ala. 2021), and *United States v. Sweatt*, 2021 WL 3022695 (D. Md. July 16, 2021) (unpublished). Both courts employed the categorical approach and determined the arson statute could not qualify as a crime of violence under § 924(c) because its "maliciousness" *mens rea* includes reckless conduct. *See Rodolph*, 551 F.Supp.3d at 1281-85 ("the court is required by the categorical approach to look to the broadest conception of the crime, which, in the case of arson, includes an act recklessly committed"); *Sweatt*, 2021 WL 3022695, at *3-5 ("parties

---

[11] In instructing and requiring the jury to unanimously determine Defendant's *mens rea,* the Court avoided the concerns expressed in *Mathis*, 579 U.S. at 510-12: there is no prior crime or "previous conviction" to which this Court must look; a jury, not a judge, unanimously and contemporaneously determined the facts which triggered application of § 924(c); and Defendant's *mens rea* was an issue raised and addressed as part of the jury's consideration, thereby eliminating any risk of "non-elemental fact[s]" being unnecessarily or erroneously misstated or concluded given the incentive to contest the issue. *Id.* at 512. Thus, application of the divisibility gymnastics makes no legal or logical sense in this setting where a contemporaneous finding is made by the same jury as to the elements of the predicate charge.

agree that the 'categorical approach' must be applied").    However, neither court specifically addressed whether the *mens rea* element is divisible and, while both cases involved contemporaneous charges under the federal arson statute and § 924(c), they also involved guilty pleas, *not* jury findings, so the exception recognized by *Taylor* was not in play.[12]

The Court did not locate, and the parties did not cite, any case applying the categorical approach where the predicate offense and § 924(c) offense were charged contemporaneously *and* where the jury was required to find all the elements necessary for the predicate offense to qualify as a crime of violence.  *See Toki*, 23 F.4th at 1281, and District Court No. 2:08-CR-00758-TC (D. Utah Oct. 6, 2011) (Verdicts, ECF Nos. 1105, 1109, 1110) (although defendants were convicted following a jury trial, the jury was not required to make any specific findings relating to the *mens rea* element of the predicate offense); *Mjoness*, 2021 WL 4078002, at *1 (defendant entered guilty plea following district court ruling that predicate offense categorically constitutes a crime of violence).[13]

Here, the Court eliminated the concern ultimately posed in *Borden* by requiring the jury to make a unanimous finding as to the Defendant's *mens rea* in committing the

---

[12] Given the harms sought to be avoided in *Mathis, see supra* n.11, the legal significance of this point to this case cannot be overstated.  Based upon the jury instructions and special verdict the jury was first required to determine whether Mr. Elliott committed arson and, if so, they then went on to determine whether he did so intentionally and deliberately or recklessly. (ECF No. 132 at 1-2).  Defendant and his counsel were fully aware of the issue at the time of trial and had every incentive to and did contest the issue of whether the alleged arson was committed intentionally and deliberately or recklessly. In addition, the jury's contemporaneous finding eliminates any mystery or doubt "what the jury in the prior trial must have accepted as the theory of the crime." *Mathis*, 579 U.S. at 511 (citing *Descamps*, 570 U.S. at 269, and *Shepard*, 544 U.S. at 25).

[13] On appeal in *Mjoness*, the Tenth Circuit Court of Appeals concluded the predicate offense is divisible and, accordingly, applied the modified categorical approach – reviewing the charging document, plea agreement, and factual basis provided at the change-of-plea hearing – in determining whether the predicate offense conviction qualified as a crime of violence. *Mjoness*, 2021 WL 4078002, at *9-10.

predicate arson offense.    The jury expressly found him guilty of a deliberate and intentional, and *not* reckless, violation of § 844(f):

We, the jury, unanimously find the following:

### *COUNT I*

1.    As to Count One of the Indictment charging the Defendant, Joel S. Elliott, with arson of a building owned by an organization receiving federal funds by means of fire and explosives, in violation of 18 U.S.C. § 844(f)(1) and (f)(2), we unanimously find the Defendant:

_____NOT GUILTY        \_\_\_✳\_\_\_GUILTY

*If you find the Defendant guilty of Count One, proceed to question number 1A.  If you find the Defendant not guilty of Count One, proceed to question number 3.*

1A.    Do you unanimously agree, by proof beyond a reasonable doubt, that the Defendant, in committing the crime charged in Count One, created a substantial risk of injury to any person, including any public safety officers performing their duties:

\_\_✳\_\_\_ Yes                _____ No

*Proceed to question number 1B.*

**1B.**   We, the jury, unanimously find, by proof beyond a reasonable doubt, that
the arson by means of fire and explosives as charged in Count One was committed with
the following state of mind (*please choose only one*):

_____✳_____ Intentionally and deliberately

*OR*

_____ Recklessly

*If you find the Defendant committed the crime charged in Count One intentionally
and deliberately, proceed to question number 2. If you find the Defendant committed the
crime charged in Count One recklessly, proceed to question number 3.*

**2.**   As to Count Two of the Indictment charging the Defendant, Joel S. Elliott,
with use of a firearm during and in relation to a crime of violence, in violation of 18
U.S.C. § 924(c)(1)(A) and (B)(ii), we unanimously find the Defendant:

_____NOT GUILTY        ____✳____GUILTY

(ECF No. 132).   Thus, there can be no question Defendant's § 844(f) arson conviction
qualifies as a crime of violence for purposes of the § 924(c) charge.

## CONCLUSION

The Court found no case contemplating or addressing the scenario presented in
this case.  Based on Tenth Circuit case law at the time, Defendant's trial was conducted
on the understanding that a criminal offense requiring only a *mens rea* of recklessness –
such as § 844(f) – could not categorically qualify as a predicate crime of violence for
purposes of a charge under § 924(c). However, the Court determined § 844(f)'s *mens rea*

element was divisible, at least prospectively, so the jury could be required to make a specific finding with respect to that element, ensuring Defendant could only be convicted on the § 924(c) charge if a jury first found, beyond a reasonable doubt, that Defendant was guilty of a deliberate and intentional arson. Having had a jury contemporaneously decide whether Defendant's conduct was intentional or reckless eliminated the constitutional concerns underlying the Supreme Court's decisions in *Mathis, Shepard* and *Descamps.*

To be sure, Defendant may take issue with the Court's pre-trial divisibility determination.   But the time to have raised such a concern would have been on direct appeal or at least in his first § 2255 motion.  He failed to do so.  Because he is now before the Court on his second or successive § 2255 motion, Defendant cannot assert "actual innocence" based on *Borden's* statutory interpretation to excuse his procedural defaults.

And finally, under the specific circumstances of this case, *Borden* has no effect on this Court's prior determination that the Defendant's § 924(c) conviction was based exclusively on that provision's "elements clause", not its residual clause.  *Davis* thus has no impact on the Defendant's § 924(c) conviction.  Defendant's second or successive motion under § 2255 must accordingly be denied.

A certificate of appealability may issue only if Defendant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires a demonstration "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."   *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  The Court finds a certificate of appealability is warranted here.

THEREFORE, it is hereby

**ORDERED** that Petitioner/Defendant's second or successive motion under 28 U.S.C. § 2255 to vacate or set aside his conviction and sentence (ECF No. 1) (CR Case ECF No. 211) is **DENIED**; it is further

**ORDERED** that a certificate of appealability shall issue.

Dated this ⟨14th⟩ day of July, 2022.

Scott W. Skavdahl
United States District Judge